IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DORCUS WITHERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-1282-NJR-DGW |
| | ) | |
| LT. EOVALDI and KIMBERLY BUTLER, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U. S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion for Preliminary Injunction and Temporary Restraining Order filed by Plaintiff, Dorcus Withers, on November 17, 2014 (Doc. 5), the Objection filed by Plaintiff on December 15, 2014 (Doc. 22), and the Motion for Leave to File Amended Objections filed by Plaintiff on December 17, 2014 (Doc. 25)   For the reasons set forth below, it is **RECOMMENDED** that the Motion for Preliminary Injunction and Temporary Restraining Order be **DENIED**, that the Motion for Leave to File Amended Objections be **MOOTED** and that the Court adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

On November 17, 2014, Plaintiff Dorcus Withers, an inmate currently housed at the Menard Correctional Center ("Menard CC"), filed a Complaint, pursuant to 42 U.S.C. § 1983,

against two individuals, Lieutenant Evolli[1] and Warden Kimberly Butler.   Plaintiff alleges that

he was assaulted by Lt. Eovaldi on July 29, 2013 and attempted suicide as a result.   Plaintiff

again was allegedly assaulted by Lt. Eovaldi (along with 4 other unnamed correctional officers)

on April 18, 2014.   Plaintiff indicates that the assaults occurred while he was seeking medical

care and believes that they were related to hunger strikes that Plaintiff was attempting to engage

in.   Plaintiff states that he filed numerous emergency grievances but that he received no

responses.   Plaintiff seeks injunctive relief (transfer from Menard CC) and costs of suit.

The Motion before the Court is entitled "Order to Show Cause for an Preliminary

Injunction & Temporary Restraining Order" (Doc. 5).   It is unsigned and does not contain an

affidavit.   The Motion reiterates the claims made in the Complaint, that Plaintiff was assaulted

on July 28, 2013 and April 18, 2014.   Plaintiff further states that:

> Plaintiff has tried to file grievance on this issue but it has been destroyed twice.
> If the court doesn't grant this injunction and the TRO plaintiff will continue to be
> assaulted by this defendant (Evolli) and his underlings and due to plaintiffs mental
> illness there's a strong possibility of suicide if continued to be faced with being
> subjected to assault by defendant.

(Doc. 5, p. 2).

The Motion does not seek any particular relief; rather, it contains a proposed order setting forth a

suggested show cause hearing as to why injunctive relief should not be granted.

On December 1, 2014, this Court held a hearing on the Motion in which Plaintiff

---

[1]  This Defendants true name is Frank Eovaldi.   This Court **RECOMMENDS** that the Clerk of
Court be **DIRECTED** to modify the docket sheet to reflect the true spelling of Defendant's
name.

appeared by video-conference and Defendants appeared by counsel, Joanne Scher.[2]   At the hearing, Plaintiff represented that he suffers from bi-polar disorder and he provided some testimony in addition to a prepared statement.   Plaintiff testified that he was moved to the North 2 Segregation Unit from the healthcare unit on October 28, 2014.   Lt. Eovaldi, who is head of the tactical squad, works the 3:00 p.m. to 11:00 p.m. shift in that unit and Plaintiff had "constant" contact with him from that time.   Plaintiff testified that Lt. Eovaldi assaulted him on November 19, 2014, while in a stairwell, by banging his head against a wall and leaving a mark on his forehead.   Plaintiff believes that the location of the assault was picked in order to avoid various video-cameras located in the prison.   Plaintiff also believes that he was assaulted at the behest of a nurse (Nurse Stephanie) working in the healthcare unit who has a relationship with Lt. Eovaldi and because he has participated in hunger strikes.   Finally, Plaintiff indicated that Lt. Eovaldi acts with impunity because he has not faced any consequences for his actions.

Based on the foregoing and lack of evidence that Plaintiff continued to have contact with Lt. Eovaldi, among other things, this Court issued a Report and Recommendation on December 9, 2014 (Doc. 18), recommending that Plaintiff's request for relief be denied.   Plaintiff then filed a timely Objection to the Report and Recommendation on December 15, 2014 (Doc. 22), and a Motion for Leave to File Amended Objections on December 17, 2014 (Doc. 25).   In these two documents, Plaintiff asserted additional facts with respect to Defendant Eovaldi.       First, though Plaintiff concedes that Lt. Eovaldi was transferred from his unit following the alleged

---

[2]  Defendants in this matter had not filed a responsive pleading, summons having been issued on November 19, 2014 (Docs. 8 and 9), by the time of the hearing.   However, this Court informed the Office of the Illinois Attorney General of the pendency of the Motion and the date of the hearing.

November 19, 2014 assault, he states that Lt. Eovaldi was immediately reassigned to his unit on December 11, 2014, two days after the Report and Recommendation was issued. Second, Plaintiff claims that he was again assaulted by Lt. Eovaldi and his "underlings" on December 12, 2014 while he was receiving his insulin injections in the healthcare unit. Plaintiff asserts that prison security footage would show evidence of the assault. Plaintiff argues that immediate injunctive relief is necessary to prevent further imminent harm, whether that harm comes from Lt. Eovaldi or Plaintiff, himself.

In light of these new allegations, a hearing was set for February 6, 2015, and Defendants were directed to provide any video-recording of the relevant events for *in camera* inspection (Doc. 31). On February 5, 2015, Defendants informed the Court that no such video recording exists (Doc. 37).

At this hearing, Plaintiff testified along with Defendant Eovaldi. Plaintiff acknowledged that, on December 12, 2014, he had a heated argument, involving profanity, with Nurse Stephanie. According to Plaintiff, this conflict arose because the nurse inquired into Plaintiff's ongoing litigation against the Defendants. Nurse Stephanie then requested assistance; and, an unnamed Sergeant along with Eovaldi came to the infirmary – Plaintiff testified that whenever he had an argument with Nurse Stephanie, she always called Lt. Eovaldi for help. Along with the Sergeant and Lt. Eovaldi, five other officers also arrived. According to Plaintiff, Lt. Eovaldi then grabbed him, "slammed" him into a wall, and had four officers escort him back to his cell. Plaintiff suffered no physical injuries as a result of this assault, only pain. Plaintiff acknowledges that there have been no physical assaults since that date but that he has been subjected to verbal assaults. Plaintiff also believes that Lt. Eovaldi is

intimidating him by being present in his cell house even though he is not assigned to work there.

Defendant Eovaldi offered a markedly different version of the events of December 12, 2014.   Lt. Eovaldi denied that he is or had been engaged in a relationship with Nurse Stephanie. Lt. Eovaldi flatly denied assaulting Plaintiff or directing other officers to assault Plaintiff.     Lt. Eovaldi testified to the frequently belligerent behavior of Plaintiff, often while receiving his insulin shot; and that if more than one officer ever escorted Plaintiff, it was because Plaintiff was being especially belligerent and disruptive.   In particular, Lt. Eovaldi testified that on December 12, 2014, he was called to the healthcare unit, that he attempted to defuse the situation between Plaintiff and Nurse Stephanie by having the Sergeant speak with him, that Plaintiff refused to speak with the Sergeant and instead became louder, and that, in light of the presence of other inmates and the desire to not have a "problem," Plaintiff was cuffed up and sent to his cell.   Lt. Eovaldi also testified that other officers may have been present in the healthcare unit because they were escorting other inmates and not because of Nurse Stephanie's request for assistance.

The February 6, 2015 hearing also uncovered disturbing realities regarding Plaintiff's mental state.   Plaintiff revealed past and current desires to kill not only himself, but Defendants in this case, nurses, and health administrators at the prison.   Plaintiff noted that he has had numerous suicide attempts and that he is under the care of mental health professionals.   This Court believed it to be prudent to inquire of Plaintiff and Lt. Eovaldi separately in light of these assertions.

## CONCLUSIONS OF LAW

As an initial matter, this Motion for Injunctive relief is not signed as required by Federal Rule of Civil Procedure 11(a).   Plaintiff should be warned that the failure to sign documents

presented to the Court may result in the striking of the documents.   It further appears that plaintiff's intent was not to request injunctive relief by the motion, but merely to request a hearing on the request for injunctive relief made in his complaint.   This Court held a hearing on December 1, 2014 in order to address his claim for injunctive relief.

Plaintiff seeks both a temporary restraining order and a preliminary injunction.   The major difference between the two remedies is that the former is issued prior to notice to an adverse party.   A temporary restraining order should not issue in this matter because Plaintiff has not presented an affidavit as required by Federal Rule of Civil Procedure 65(b)(1)(A).   In addition, Defendants were notified of the hearing and appeared.   For these reasons, Plaintiff is not entitled to a temporary restraining order.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief.   *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)).   The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).   Plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).   As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v.*

*DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).   Once Plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest."   *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).   In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."   18 U.S.C. § 3626(a)(2).   Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

Based on the second hearing, it appears that Plaintiff's interactions with Lt. Eovaldi are the result of his own belligerent behavior towards medical staff.   This behavior appears to be the result of Plaintiff's mental condition and his desire to not appear "weak" in the face of perceived threats or assaults.   The behavior has resulted in action on the part of Lt. Eovaldi which includes returning Plaintiff, forcibly it seems, to his cell in order to restore order and prevent issues with other inmates.   It would appear unlikely that Plaintiff would succeed on the merits of his claim if this is the pattern of his interaction with Lt. Eovaldi.   That is, it is unlikely that Lt. Eovaldi is using excessive force, if any, in light of Plaintiff's behavior and the related risk of additional violence.   Thus, this Court cannot find that Plaintiff has a reasonable likelihood of success on the merits.

Even if Plaintiff has a reasonable likelihood of success on the merits (the evidence in this matter will most likely be a swearing contest between the parties, especially in light of Plaintiff's statements that Lt. Eovaldi would choose unmonitored areas to assault him) and Plaintiff has no

remedy at law (he is only seeking injunctive relief in his Complaint), there is only a limited showing that he will suffer irreparable harm absent an injunction and a balance of interests does not warrant injunctive relief at this point in the litigation.

Plaintiff has not shown that he is likely to suffer irreparable harm absent an injunction. The record does not indicate any physical altercation between Plaintiff and Lt. Eovaldi since December 12, 2014.   Indeed, this Court credits Lt. Eovaldi's testimony that Plaintiff was the aggressor and that he was restrained and sent back to his cell because of his behavior.   This Court further credits Lt. Eovaldi's testimony that he did not assault or threaten Plaintiff on that date or any other date.   As to the events that supposedly trigger the assaults, there is no indication that Plaintiff is currently engaged in or plans to engage in a hunger; there is also no assertion that Lt. Eovaldi regularly escorts Plaintiff to his medical appointments or that he is otherwise in contact with Plaintiff on a regular basis; there is no evidence that, as head of the tactical unit, Lt. Eovaldi will have greater contact with Plaintiff.   The evidence merely reveals that it is Plaintiff's own actions that place Lt. Eovaldi in his path and that Lt. Eovaldi has acted to restore order and not to assault or threaten Plaintiff with impunity.   As to Warden Butler, Plaintiff merely has alleged that she is ignoring his grievances.   There is no indication that he has any contact with the Warden or that any of her actions (or inactions) are intentional or are related to any harm he may suffer.   Thus, there is no showing that any harm is likely; Plaintiff merely has suggested that there is a possibility that he will be harmed.   *See Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011).   Plaintiff has not suggested that any current threat exists.

Plaintiff admittedly suffers from extensive and troubling mental problems, which no

doubt impact the manner in which he perceives the world around him.   Perhaps as a result, Plaintiff only has provided sheer speculation as to Lt. Eovaldi's motivations for assaulting him. A close reading of the complaint suggests that Lt. Eovaldi's actions are related to Plaintiff's hunger strikes and need for medical care; and, that Lt. Eovaldi is associated with a nurse in the healthcare unit on whose behalf he assaults Plaintiff.   Plaintiff has presented no evidence, other than his unsupported (and contested) allegations, that Lt. Eovaldi was motivated by any of these considerations.   While the Court does not doubt that Plaintiff has had contact with Lt. Eovaldi and that Plaintiff *believes* that Lt. Eovaldi has some personal animus against him, there has been no showing that such an animus exists.

At this stage of the litigation, the balance of harms weighs against Plaintiff.   An injunction issued at this stage, on such speculative and unreliable information, would either direct the Illinois Department of Corrections ("IDOC") to transfer Plaintiff to a new prison or to prohibit Lt. Eovaldi for working near Plaintiff.   Either scenario would result in great expense not only in monetary cost but also in man-hours to determine what location would suit Plaintiff (in light of his medical condition) or how work shifts can be modified to prevent contact between Plaintiff and Lt. Eovaldi.   The public interest would not be served by replacing the IDOC's judgment, as to where to house inmates and place employees, with the Court's judgment based on such minimal evidence.   Plaintiff's request for such a drastic remedy as preliminary injunctive relief should not be granted.

RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that

1.      The Motion for Preliminary Injunction and Temporary Restraining Order filed by Plaintiff, Dorcus Withers, on November 17, 2014 (Doc. 5) be **DENIED;**

2.      That the Objection filed on December 15, 2014 (Doc. 22) and the Motion for Leave to File Amended Objections filed on December 17, 2014 (Doc. 25) be considered as briefs in support of the Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 5);

3.      That, accordingly, the Motion for Leave to File Amended Objections filed on December 17, 2014 (Doc. 25) be **DENIED AS MOOT**;

4.      That Plaintiff be **WARNED** to sign all pleadings and documents filed with the Court in accordance with Rule 11 or risk the striking of the pleadings/documents;

5.      That the Clerk of Court be **DIRECTED** to change in the docket the spelling of Defendant Lt. Evolli's name to "Frank Eovaldi";

6.      And, that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen

(14) days after service of this Report and Recommendation to file written objection thereto.

The failure to file a timely objection may result in the waiver of the right to challenge this Report

and Recommendation before either the District Court or the Court of Appeals.   *Snyder v. Nolen*,

380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir.

2003).

**DATED: April 9, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**

Page **10** of **10**